UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
:
UNITED STATES OF AMERICA,
:
-against- : MEMORANDUM DECISION
: AND ORDER
DAVID PIERRE,
:
Defendant. : 16 Crim. 673-003 (GBD)
:
------------------------------------ x

GEORGE B. DANIELS, United States District Judge:

Defendant David Pierre moves to reduce his sentence on compassionate release grounds pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* Mem. in Supp. Mot. to Reduce Sentence ("Mem."), ECF No. 178.) Pierre argues that there are extraordinary and compelling reasons warranting a sentence reduction, including: 1) the "injustice" of the reverse sting operation that led to his arrest; 2) the sentencing disparity between Pierre and his co-defendants; and 3) the impact of COVID-19 on his sentence. (*Id.* at 1–2.) The Government opposes Pierre's motion. (Gov.'s Mem. in Opp. to Mot. to Reduce Sentence ("Opp."), ECF No. 182.) For the reasons set forth below, this Court **DENIES** Pierre's motion.

## I. FACTUAL BACKGROUND

Pierre was arrested for his involvement in a five-defendant drug robbery conspiracy following an investigation led by the Drug Enforcement Agency ("DEA"). (Presentence Investigation Report ("PSR") ¶¶ 15, 36.) DEA agents worked with two confidential sources ("CS-1" and "CS-2") to set up a reverse stash house sting operation. (*Id.* ¶ 16.) In August 2016, CS-1 told Louis Knight that an individual was expected to transport 12 kilograms of cocaine from Florida to New York City and asked Knight if he would be interested in robbing the individual.

1

(*Id.* ¶¶ 16, 30.) Knight agreed, and throughout August and early September of 2016, CS-1 communicated with Knight and co-defendant Neil Dussard to plan the robbery. (*Id.* ¶¶ 17–25.)

Pierre's involvement began on the day of the planned robbery when Knight offered him an opportunity to make some money by "driv[ing] some people to a location." (*Id.* ¶¶ 26, 43.) Despite Pierre's last-minute addition, the PSR characterized him as an organizer of the conspiracy because he personally recruited co-defendants Ricardy Louissant and Kareem Abdul Mathis to join the scheme. (*Id.* ¶ 39.) The group agreed that Pierre and his two recruits would receive a share of the bounty amounting to approximately 1.5 kilograms of cocaine, which the three planned to sell on a retail basis. (*Id.* ¶ 38.)

On the evening of the planned robbery, the group drove two vehicles ("Vehicle 1" and "Vehicle 2") towards the robbery site. (*See id.* ¶¶ 27–31.) Knight and Dussard were in Vehicle 1. (*Id.* ¶ 31.) Pierre, Louissant, and Matthis were in Vehicle 2 with firearms "on deck" to subdue the victim if he was armed and dangerous. (*Id.* ¶¶ 30, 34–35.) As the co-conspirators approached the robbery site, they were apprehended by law enforcement. (*Id.* ¶¶ 32–35.)

Officers identified Pierre as the driver of Vehicle 2. (*Id.* ¶ 35.) In Vehicle 2, officers discovered three firearms. (*Id.*) They recovered an H&K .40 caliber pistol under the driver's seat ("firearm 2"), a Glock 21 .45 caliber pistol under the passenger's seat ("firearm 3"), and a pair of gloves and a ski mask on the floor of the rear passenger area. (*Id.*) Additionally, officers found a pistol tucked away in Louissant's waistband ("firearm 1"). (*Id.* ¶ 34.) DNA testing revealed that Pierre's DNA matched the DNA samples found on firearms 2 and 3. (*Id.* ¶ 37.)

On February 16, 2018, Pierre was charged in a five-count Superseding Indictment with conspiracy to commit Hobbes Act robbery in violation of 18 U.S.C. § 1951 ("Count One"); conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in

violation of 21 U.S.C. § 846(b)(1)(A) ("Count Two"); possession of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2) ("Count Three"); and unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and (2) ("Counts Four and Five"). (*Id.* ¶¶ 1–6.)

Ultimately, Pierre negotiated a guilty plea deal with the Government. (*Id.* ¶ 9.) The plea agreement determined that Pierre qualified as a career offender with a criminal history category of VI, based on his extensive criminal record.[1] (*Id.*) Based on Pierre's criminal history category and the total offense level, the plea agreement calculated a stipulated Guidelines sentencing range of 292 to 365 months' imprisonment, with a ten-year mandatory term of imprisonment, five of which had to be served consecutively to any other sentence imposed. (*Id.*) On March 2, 2018, Pierre pleaded guilty to Counts One through Three of the Superseding Indictment pursuant to the written plea agreement. (*Id.* ¶ 8.)

On January 30, 2019, Pierre appeared before this Court for sentencing. (*See* January 30, 2019 Minute Entry.) Before imposing a sentence, this Court inquired about the relative roles and backgrounds of Pierre's co-defendants. (Sentencing Tr., ECF No. 152, at 6:1–4.) This Court also inquired about the co-defendants' respective pleas, Guidelines ranges, mandatory minimums, and sentences. (*Id.* at 6:21–9:10.) Ultimately, this Court imposed a sentence of 144 months' imprisonment: seven years on Count One and seven years on Count Two to run concurrently, and a mandatory five years' imprisonment on Count Three to run consecutive to the other counts. (Judgment, ECF No. 148, at 2.) The sentence was well below the stipulated Guidelines range but

---

[1] In 1998, Pierre received a 4-year sentence for attempted first degree robbery. (PSR ¶ 58.) In 2007, Pierre received a 45-day sentence for assault of a government official. (*Id.* at ¶ 59.) In 2008, Pierre received a 63-month sentence after being convicted of making a false statement in relation to firearms, possession of a firearm by a felon, and distribution and possession of marijuana and cocaine. (*Id.* at ¶ 60.) In 2016, Pierre received a 6-month driver's license suspension and a fine for possession of marijuana. (*Id.* at ¶ 61.)

above the mandatory minimum. (Sentencing Tr. at 16:9–14.) In imposing Pierre's sentence, this Court considered his co-defendants' sentences, his criminal history, his being "significantly" armed during the commission of the crime, and the violent nature of the offense. (*Id.* at 16:9–21.)

During his term of imprisonment, Pierre has lost over a year of good time credits. (Opp., Ex. B.) He assaulted another inmate, provided drugs to a fellow inmate on suicide watch, and possessed illegal drugs. (*Id.*) Pierre's time in prison has also been marked by the COVID-19 pandemic. (Mem. at 19–22.) Pierre suffers from overweight and latent tuberculosis, and contracted COVID-19 in December 2020. (*Id.* at 20.) Of importance, however, Pierre has refused to take the COVID-19 vaccine offered by the BOP. (*Id.* at 21.)

## II.  **LEGAL STANDARD**

Save for limited exceptions, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). One such exception is provided in 18 U.S.C. § 3582(c)(1)(A)(i), often called the "compassionate release" statute, which, following an amendment by the First Step Act in 2018, now empowers a defendant to bring his own motion requesting a reduced sentence. *See, e.g., United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020).

A court may reduce a term of imprisonment pursuant to the compassionate release statute if it finds that (1) the defendant's circumstances present extraordinary and compelling reasons to warrant a reduction, (2) the factors prescribed in 18 U.S.C. § 3553(a) do not outweigh such extraordinary and compelling reasons, and (3) a reduction would be consistent with the relevant policy statements of the Sentencing Commission, i.e., the policy statement in U.S. Sentencing Guidelines Manual § 1B1.13 ("Policy Statement 1B1.13."). 18 U.S.C. § 3582(c); *see also United States v. Seabrook*, No. 16 Cr. 467 (AKH), 2023 WL 2207585, at *2–3 (S.D.N.Y. Feb. 23, 2023).

### III. A REDUCTION OF SENTENCE IS NOT WARRANTED

#### A. No Extraordinary and Compelling Reasons Exist to Grant a Sentence Reduction

Pierre argues that the following "extraordinary and compelling" reasons exist for his early release: 1) the "injustice" of the reverse sting operation that led to his arrest; 2) the sentencing disparity between Pierre and his co-defendants; and 3) the impact of COVID-19 on his sentence. (Mem. at 1–2.) Pierre's arguments are unavailing.

#### a. Reverse Sting Operation

Pierre contends that his "sentence is inherently unjust because it was driven by the application of the sentencing guidelines to a fictitious plot, involving an arbitrary amount of fictitious drugs, that federal agents conceived from whole cloth." (Mem. at 11.) In support of his argument, Pierre cites several decisions from the Northern District of Illinois granting compassionate release for individuals who were charged and convicted following sting operations. (*See* Mem. at 13–14; June 29, 2023 Letter, ECF No. 190; Dec. 19, 2023 Letter, ECF No. 192; Sept. 26, 2024 Letter, ECF No. 193.) However, as the Government notes, recent precedent from this District has considered and rejected such challenges to sting operations. (Oral Argument Tr., ECF No. 201, at 17:7–20.)

In *United States v. Wilson*, the court considered movant Wilson's request for compassionate release. *See* No. 13-CR-777-3 (LJL), 2025 WL 89296 (S.D.N.Y. Jan. 14, 2025). In support of his motion, Wilson pointed to "his limited role in the offense" and "the fact that the offense was arranged by the Government as part of a 'sting.'" *Id.* at *5. Wilson also argued that "he was not involved in any of the planning stages of the drug conspiracy. . ., joined only during the final meeting and stayed in the car, and his 'criminal behavior was limited to agreeing to the fictitious robbery. . . and possessing a firearm during the crime.'" *Id.* (citation omitted). The *Wilson*

5

court rejected these arguments, finding that Wilson failed "to identify circumstances or a combination of circumstances . . . that would constitute extraordinary or compelling reasons for his compassionate release." *Id.* The court also noted that the sentencing judge was aware of Wilson's arguments at the time of sentencing and had considered those factors when crafting the original sentence. *Id.*

As in *Wilson*, Pierre argues here that the sting operation, in combination with his late addition to the plot and his role in the offense, is an extraordinary and compelling reason for a sentence reduction. (Mem. at 14.) However, as in *Wilson*, this argument is unavailing. As the Government notes, "the mere fact that Pierre was ultimately apprehended in the course of a sting operation does not undermine his conviction or sentence, in the face of the overwhelming evidence against him." (Opp. at 7.) Pierre, who was engaged in the retail sale of crack cocaine prior to the instant offense, recruited two other people to join the conspiracy and met with his co-conspirators to make last minute preparations for the robbery. (*Id.*) DNA testing confirmed that Pierre possessed two firearms intended for use during the robbery. (*Id.*) Furthermore, the sting operation, Pierre's role in the offense, and his late addition were all factors already considered by this Court at the time of sentencing. (*Id.* at 8.)

### b. Sentence Disparity

Pierre also argues that the "extreme sentencing disparity" between him and his co-defendants is an "extraordinary and compelling reason" for his release.[2] (*See* Mem. at 15.) Pierre's argument fails, however, because he has not demonstrated that he is similarly situated to the co-

---

[2] Neil Dussard received a sentence of 84 months' imprisonment. (Judgment, ECF No. 116, at 2.) Ricardy Louissant received a sentence of 60 months' imprisonment. (Judgment, ECF No. 126, at 2.) Kareem Abdul Mathis received a sentence of 30 months' imprisonment. (Judgment, ECF No. 43, at 2.) The Government sought Guidelines sentences for all defendants except Louis Knight, who negotiated a plea which resulted in a time-served sentence equivalent to 30 months' imprisonment. (Judgment, ECF No. 158, at 3.)

6

defendants with whom he compares himself. As Second Circuit law explains, the disparity between differently situated co-conspirators is not a compelling reason for a sentence reduction. *See United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024) ("[d]isparities between the sentences of coconspirators can exist for valid reasons") (internal citations omitted.").

Pierre faced a stipulated Guidelines range (292 to 365 months' imprisonment) significantly above that of his co-defendants based on the counts to which he pleaded guilty, his lengthy criminal history, and his status as a career offender.[3] (PSR ¶ 8.) Given his criminal history and high stipulated Guidelines range, Pierre's circumstances varied meaningfully from those of his co-defendants'. At sentencing, this Court was aware of all material information necessary to impose a sentence. This Court considered Pierre's co-defendants' sentences, his criminal history, his being "significantly" armed during the commission of the crime, and the violent nature of the offense. (Sentencing Tr. at 16:9–21.) While a disparity exists between Pierre and his co-defendants' sentences, it exists for "valid reasons." *Fernandez*, 104 F.4th at 428.

### c. COVID-19

Finally, Pierre argues that the COVID-19 pandemic weighs in favor of a sentence reduction. (Reply Mem. in Supp. Mot. to Reduce Sentence ("Reply"), ECF No. 187, at 7.) Pierre, who is overweight and suffers from latent tuberculosis, explains that his medical conditions increase his "risk of suffering severe illness if infected with COVID-19."[4] (Mem. at 20–21.) Pierre

---

[3] Louis Knight's Guidelines range was 180–181 months. (PSR, ECF No. 162, at 22.) Neil Dussard's Guidelines range was 101–111 months. (PSR, ECF No. 61, at 24.) Ricardy Louissant's Guidelines range was 60 months. (PSR, ECF No. 110, at 23.) Kareem Adbul Mathis's Guidelines range was 46–57 months. (PSR, ECF No. 38, at 17.)

[4] The Centers for Disease Control and Prevention ("CDC") lists overweight and tuberculosis as medical conditions posing an increased risk for severe COVID-19 symptoms. *See* People with Certain Medical Conditions and COVID-19 Risk Factors, CTR. DISEASE CONTROL, https://www.cdc.gov/covid/risk-factors/index.html (last visited May 22, 2025).

7

also highlights the "onerous conditions" of confinement caused by the pandemic. (Reply at 7.) The Government maintains that Pierre's refusal to take the COVID-19 vaccine undermines his arguments. (*See* Opp. at 9.)

As an initial matter, "since [defendant] filed his motion, the threat from COVID-19 has diminished nationwide and within the BOP." *United States v. Roman*, No. 19 Crim. 116 (KMW), 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022). The Federal Bureau of Prisons' statistics indicate that there were zero open cases of COVID-19 at FCI Schuylkill as of January 21, 2025. *See* Inmate COVID-19 Data, FED. BUREAU PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited May 22, 2025). Nationwide, rates of severe illness and death resulting from the virus have decreased due to advancements in antiviral treatments.[5]

Pierre's refusal to vaccinate further undermines his argument for early release. (*See* Opp. at 9;) *United States v. Mascuzzio*, No. 16 Cr. 576 (JFK), 2021 WL 794504, at *3 (S.D.N.Y. Mar. 2, 2021) (court would be "hard-pressed" to conclude defendant's health issues constituted extraordinary and compelling reasons to reduce his sentence "in light of [defendant's] voluntary refusal of an approved vaccine that is 'highly effective at preventing COVID-19' and 'may also help keep [him] from getting seriously ill even if [he did] get COVID-19'") (quoting Benefits of Getting Vaccinated, CTR. DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html).

### B. A Sentence Reduction Is Inconsistent with Policy Statement 1B1.13

Policy Statement 1B1.13 requires this Court to determine that Pierre "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Given the serious violent nature of his crime, Pierre has not demonstrated

---

[5] *See* The Changing Threat of COVID-19, CTR. DISEASE CONTROL, https://www.cdc.gov/ncird/whats-new/changing-threat-covid-19.html (last updated May 22, 2025).

8

that his immediate release would not be "a danger to the safety of any other person or to the community." *Id.* Furthermore, Pierre has lost significant good time credit while incarcerated due to repeated disciplinary infractions. (*See* Opp., Ex. B.) Pierre's conduct in prison strongly weighs against his early release under Policy Statement 1B1.13.

### A. The Section 3553 Factors Weigh Against a Reduction

The Section 3553(a) factors also counsel against Pierre's early release. Pierre's below Guidelines sentence appropriately reflects the gravity of his offense and the need for deterrence. Though Pierre has served the majority of his anticipated term of imprisonment, his crime is serious and warrants him serving his full term. Additionally, Pierre's sentence of 144 months is already far below the Guidelines range (292–365 months' imprisonment), despite his involvement in a scheme to conduct a violent drug robbery. (Opp. at 1.) Given the record, the nature and circumstances of the offense, and Pierre's history and characteristics, no reduction in sentence is warranted.

### I. CONCLUSION

Pierre's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to close the open motion at ECF No. 177, and this case, accordingly.

Dated: MAY 2 8 2025
New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge